IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| PEGGY MONROE, | : | |
| | : | |
|     Plaintiff, | : | |
| v. | : | |
| | : | No. 3:12-CV-92 (CAR) |
| UNITED STATES OF AMERICA, | : | |
| | : | |
|     Defendant. | : | |
| _____ | : | |

## ORDER ON DEFENDANT'S MOTION IN LIMINE

Before the Court is Defendant's Motion in Limine to exclude the causation testimony of Plaintiff's treating physician, Dr. Bryan Barnes.  Having considered the parties' arguments and the applicable law, Defendant's Motion [Doc. 15] is hereby **GRANTED**.

## FACTUAL AND PROCEDURAL HISTORY

In the early morning hours of May 4, 2011, while driving her morning paper route, Plaintiff fell asleep at the wheel.  Her car drifted off the road, careened down an embankment, and crashed into a tree.  Photographs of the scene show that this crash damaged her car severely.  Moreover, she did not have on a seat belt, and her air bag did not deploy.  After the wreck Plaintiff climbed out the passenger-side door and made her way back to the road.

Once Plaintiff returned to the road, she crossed over and began walking along the right shoulder of the road with the direction of traffic.  While walking in that direction, FBI Agent Mark Moore hit Plaintiff from behind with his car.  He was on his way to work.  Agent Moore turned his vehicle around and eventually found Plaintiff off the side of the road.

An ambulance transported Plaintiff from the scene of the second accident to the Emergency Room at Athens Regional Medical Center.  Dr. Bryan Barnes, a neurosurgeon, saw her there, took her medical history, and examined her.  According to his emergency room record, she was "amnestic except that she was thrown to the ground.  She does not know if she was injured after the 1st accident, but right now she is complaining of pain in the right arm, low back, and neck."[1]

When Dr. Barnes examined her, she could move "all extremities without deficit."[2]  Dr. Barnes ordered a CT scan of her cervical spine and diagnosed a C7 facet fracture with C6-7 neuroforaminal stenosis.  His treatment included surgery to correct her cervical fracture.  While in the hospital, she was subsequently diagnosed with a

---

[1] Medical Records, p. 1.  At the Court's request, the parties produced Plaintiff's medical records to aid in the Court's consideration of this Motion.  The Court relied on these records in rendering this opinion.  Therefore, the Clerk is hereby **DIRECTED** to file these records under seal contemporaneously with this order.

[2] *Id.*

2

fractured pelvis and a fractured left foot, but these injuries are not part of Dr. Barnes's opinions because he did not know about them.[3]

On July 18, 2012, Plaintiff sued Defendant pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671, *et seq.*, alleging that Agent Moore negligently operated his vehicle while in the course and scope of his employment, and that his negligence directly and proximately caused her injuries.  To support her claim, Plaintiff offers the expert testimony of Dr. Barnes who opines that the second accident, not the earlier crash into the tree, most likely caused Plaintiff's spinal injuries.  Defendant now moves to exclude Dr. Barnes's medical causation testimony on the grounds that his opinion fails to satisfy Federal Rule of Evidence 702, as well as *Daubert v. Merrell Dow Pharmaceuticals, Inc.*[4] and its progeny.

## LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony, and it states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the

---

[3] *Id*. at 19; Barnes Dep. 33 [Doc. 19].
[4] 509 U.S. 579 (1993).

expert has reliably applied the principles and methods to the facts of the case. [5]

Simply stated, under Rule 702, the trial court can admit relevant expert testimony only if it finds that: (1) the expert is qualified to testify about the matters he intends to address; (2) the methodology used by the expert to reach his conclusions is sufficiently reliable; and (3) the expert's testimony will assist the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or determine a fact in issue.[6]

As the Supreme Court explained in *Daubert*,[7] Rule 702 imposes a duty on trial courts to act as "gatekeepers" to ensure that speculative and unreliable opinions do not reach the jury.[8]  Acting as a gatekeeper, the trial court must make certain that expert witnesses employ in the courtroom the "same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[9]  The court's gatekeeping role is especially significant, since "the expert's opinion can be both powerful and quite misleading because of the difficulty in evaluating it."[10]

---

[5] Fed. R. Evid. 702.

[6] *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1257 (11th Cir. 2002) (citing *Maiz v. Virani*, 253 F.3d 641, 664 (11th Cir. 2001)); *J & V Dev., Inc. v. Athens-Clarke Cnty.*, 387 F. Supp. 2d 1214, 1223 (M.D. Ga. 2005).

[7] 509 U.S. 579 (1993).

[8] *Id.* at 589, n.7; *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1237 (11th Cir. 2005).

[9] *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999); *see also Goebel v. Denver & Rio Grande W. R.R. Co.*, 346 F.3d 987, 992 (10th Cir. 2003).

[10] *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (quoting *Daubert*, 509 U.S. at 595) (internal quotations omitted).

To fulfill its role, the trial court must determine whether the expert has the requisite qualifications to offer his or her opinions.[11] The trial court must also "'conduct an exacting analysis' of the <u>foundations</u> of expert opinions to ensure they meet the standards for admissibility under Rule 702."[12] Finally, the court must ensure the relevancy of expert testimony, meaning that it must determine whether the testimony will assist the trier of fact.[13]

The court performs its gatekeeping role consistent with Rule 104(a), which commits preliminary evidentiary questions to the court's decision and which further empowers courts in answering these questions to rely on evidence without being constrained by the rules of evidence.[14] In sum, in acting as a gatekeeper, the court must keep "unreliable and irrelevant information from the jury because of its inability to assist in factual determinations, its potential to create confusion, and its lack of probative value."[15] Although *Daubert* involved scientific experts, the Supreme Court has made it clear that the strictures of Rule 702 and *Daubert* apply with equal force to non-scientific expert witnesses.[16] Also, in all cases the proponent of the expert witness

---

[11] *Poulis-Minott v. Smith*, 388 F.3d 354, 359 (1st Cir. 2004); *see also Frazier*, 387 F.3d at 1260.

[12] *Frazier*, 387 F.3d at 1260 (quoting *McCorvey*, 298 F.3d at 1257) (emphasis in original).

[13] *See Daubert*, 509 U.S. at 591.

[14] *Id.* at 592-93 & n. 10; Fed. R. Evid. 104(a). In particular, Rule 104(a) provides that "[t]he court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible. In so deciding, the court is not bound by evidence rules, except those on privilege." Fed. R. Evid. 104(a).

[15] *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1311-12 (11th Cir. 1999).

[16] *See Kumho Tire*, 526 U.S. at 147.

bears the burden of establishing that the expert's testimony satisfies the qualification, reliability, and helpfulness requirements of Rule 702 and *Daubert*.[17]   Finally, "any step that renders the analysis unreliable renders the expert's testimony inadmissible."[18]

Beginning with the qualification requirement, the Eleventh Circuit has explained that "experts may be qualified in various ways."[19]   Certainly, an expert's scientific training or education may provide one means by which an expert may qualify to give certain testimony; however, experience in a particular field may also qualify an expert to offer an opinion on a particular matter.[20]   Indeed, "experts come in various shapes and sizes," and, consequently, "there is no mechanical checklist for measuring whether an expert is qualified to offer opinion evidence in a particular field."[21]   In all cases, the court must focus its inquiry on whether the expert has the requisite skill, experience, training, and education to offer the testimony he intends to introduce.[22]

Regarding the reliability requirement, the Eleventh Circuit directs trial courts to assess "whether the reasoning or methodology underlying the testimony is . . . valid and whether that reasoning or methodology properly can be applied to the facts in

---

[17] *McClain*, 401 F.3d at 1238 & n. 2; *see also Frazier*, 387 F.3d at 1260.
[18] *Goebel*, 346 F.3d at 992 (quoting *Mitchell v. Gencorp, Inc.*, 165 F.3d 778, 782 (10th Cir. 1999)) (internal alterations omitted).
[19] *Frazier*, 387 F.3d at 1260.
[20] *Id.* at 1260-61.
[21] *Santos v. Posadas de Puerto Rico Assocs. Inc.*, 452 F.3d 59, 63 (1st Cir. 2006).
[22] *Poulis-Minott*, 388 F.3d at 359.

issue."[23]  This inquiry must focus "solely on the principles and methodology [of the experts], not on the conclusions that they generate."[24]

Daubert offers four non-exclusive factors that courts may consider in evaluating the reliability of an expert's testimony: (1) testability; (2) error rate; (3) peer review and publication; and (4) general acceptance.[25] These four factors most readily apply in cases involving scientific testimony and may offer little help in other cases, particularly those involving non-scientific experts.[26]  Accordingly, these factors merely illustrate rather than exhaust the factors or tests available to the trial court.  The trial court has "considerable leeway" in deciding which tests or factors to use to assess the reliability of an expert's methodology.[27]

The advisory committee's notes for Rule 702 offer an additional list of factors or tests. These tests are:

(1)  Whether the expert is proposing to testify about matters growing naturally and directly out of research he has conducted independent of the litigation, or whether he has developed his opinion expressly for purposes of testifying;

(2)  Whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion;

(3)  Whether the expert has adequately accounted for obvious alternative explanations;

---

[23] Frazier, 387 F.3d at 1262 (quoting Daubert, 509 U.S. at 592-93) (internal alterations omitted).

[24] Daubert, 509 U.S. at 595; see also Goebel, 346 F.3d at 992.

[25] 509 U.S. at 593-95; see also J & V Dev., Inc., 387 F. Supp. 2d at 1224.

[26] See Kumho Tire, 526 U.S. at 150-52.

[27] Id. at 151-52.

(4)     Whether the expert is being as careful as he would be in his regular professional work outside his paid litigation consulting;

(5)     Whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give.[28]

Like the four *Daubert* factors, these factors do not comprise a definitive checklist, nor is any single factor dispositive of reliability; instead, the tests articulated in the advisory committee's notes merely illustrate the issues a court may consider in evaluating an expert's testimony.[29]

Finally, for admission, the expert testimony must assist the trier of fact.  Expert testimony assists the trier of fact "if it concerns matters that are beyond the understanding of the average lay person."[30]  "[E]xpert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments."[31]  Nor does expert testimony help the trier of fact if it fails to "fit" with the facts of the case.[32] Expert testimony lacks "fit" when "a large analytical leap must be made between the facts and the opinion."[33]  "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."[34]  Thus, the court may exclude otherwise reliable testimony if it does not have "sufficient

---

[28] Fed. R. Evid. 702 advisory committee's note (2000 amendments).

[29] *See id.*

[30] *Frazier,* 387 F.3d at 1262.

[31] *Id.* at 1262-63.

[32] *McDowell v. Brown,* 392 F.3d 1283, 1299 (11th Cir. 2004).

[33] *Id.; see also Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997).

[34] *General Electric,* 522 U.S. at 146.

bearing on the issue at hand to warrant a determination that it [is 'helpful' to the trier of fact]."[35]   At all times when scrutinizing the reliability and relevance of expert testimony, a court must remain mindful of the delicate balance between its role as a gatekeeper and the jury's role as the ultimate fact-finder.  A district court's "gatekeeper role . . . is not intended to supplant the adversary system or the role of the jury."[36]  "Vigorous cross- examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[37]  A court may not "evaluate the credibility of opposing experts" or the "persuasiveness of competing scientific studies;"[38] instead, its duty is limited to "ensur[ing] that the fact-finder weighs only sound and reliable evidence."[39]

## ANALYSIS OF DR. BARNES'S CAUSATION OPINION

When asked to give his opinion within a reasonable degree of medical certainty about what caused Plaintiff's neck injury, Dr. Barnes stated,

> I'll go from what I'm extremely certain about is that Ms. Monroe on the 4th of May, 2011, suffered blunt force trauma to her neck which caused a fractured disc dislocation.  Given a choice between two mechanisms of injury, one being an isolated car accident where she was an unrestrained driver, and one in which she was a pedestrian struck by a motor vehicle, I would choose the incident where she was struck as a pedestrian as being the cause of her fracture.[40]

---

[35] *Bitler v. A.O. Smith Corp.*, 391 F.3d 1114, 1121 (10th Cir. 2004).
[36] *Allison*, 184 F.3d at 1311.
[37] *Daubert*, 509 U.S. at 596.
[38] *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK, Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003).
[39] *Frazier*, 387 F.3d at 1272.
[40] Barnes Dep. 19-20 [Doc. 19].

Dr. Barnes bases his conclusion on (1) his personal observation and treatment of Plaintiff's condition, (2) a review of Plaintiff's medical records (including a review of the diagnostic studies of her neck as well as a history given by Plaintiff), and (3) his experience treating other patients suffering from this type of injury.  Using these three sources, Dr. Barnes considered the two possible causes of Plaintiff's injuries and ruled out her crash into the tree as the cause primarily based on a notation in the medical records indicating that Plaintiff could walk after that crash.[41]

Before beginning its analysis, the Court notes that this case presents a very unusual question.  Neurosurgeons often give causation opinions for their patients. These opinions frequently involve distinguishing between pain and injury caused by a longstanding, chronic condition versus an acute injury caused by a fall or an automobile accident.  The Court, however, has never seen a case where a doctor had to give a causation opinion about which of two consecutive car accidents, both close in time, caused the injury in question or, for that matter, any other injury.

With that context in mind, the Court will now explain why Dr. Barnes's causation testimony is inadmissible.

---

[41] *Id.* at 33.  Although Dr. Barnes knew Plaintiff walked after the tree collision, he was generally unaware of how far Plaintiff walked. *Id.* at 11.

## I.     Qualifications

Defendant first objects to the admissibility of Dr. Barnes's causation testimony on the ground that he lacks the qualifications to offer such an opinion.   Defendant's qualification arguments, however, relate more to the reliability of his opinion, not his qualifications.[42]   Therefore, the Court will address these arguments under the reliability prong of the analysis.

## II.     Reliability

Dr. Barnes opines that the second accident, when the FBI agent struck Plaintiff while she was walking, likely caused her cervical fracture.   Assuming *arguendo* that Dr. Barnes is qualified to offer an opinion on medical causation in a case of this complexity, the Court nevertheless finds his opinion unreliable because he did not use adequate data, and he rests his opinion on an unreliable methodology.

Ultimately, Dr. Barnes's opinion is unreliable because he did not know important facts about  Plaintiff's crash into the tree versus what happened when the agent hit her on the roadway—facts that affect the nature of Plaintiff's injuries and the forces that caused those injuries.   Dr. Barnes testifies that, generally speaking, more force will be imparted to the human body when a vehicle hits a pedestrian as opposed to a driver

---

[42] For example, Defendant argues Dr. Barnes is not qualified to provide a causation opinion in this case because he does not know the basic factual circumstances surrounding the two accidents.  The facts (or lack thereof) upon which he bases his opinion go to the reliability of his testimony as opposed to his qualifications to offer that opinion.

protected by a vehicle's interior.[43]   Generally speaking, this may be true, but a reliable opinion requires specific details, not just general principles.[44]   The Court finds several serious problems with Dr. Barnes's methodology.

A car crashing into a tree can cause extreme force, resulting in severe injuries and even death to the driver.   On the other hand, a glancing blow off the side of a car may not cause much injury.   Also, car accidents account for many injuries and deaths in this country every year, and most of the people who suffer injury or death are in the car when the crash occurs.   Furthermore, regarding Barnes's opinion that a driver is better protected on the inside of the car versus walking down a road, the interior of a vehicle—the steering wheel, the dashboard, the side door, the side window, the driver's seat, the floorboard, and the windshield, can all cause serious injury to a driver in a crash.   Indeed, one of the major purposes of seat belts and air bags is to keep the driver's body, especially the head and neck, from slamming into the components of a vehicle's interior.   One does not have to be an expert to know that the human neck is very vulnerable in any wreck involving great force.   This is important because of what we do know about Plaintiff's crash into the tree.

Plaintiff did not have on her seat belt, her air bag did not deploy, and her car's windshield and the passenger side window were broken. The driver's door was

---

[43] Barnes Dep. 25 [Doc. 19].
[44] *See McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1244 (11th Cir. 2005).

crumpled, and the hood was jammed accordion-like back towards the windshield. Clearly, a driver can suffer severe blunt trauma to her neck in a crash that occurred with the force sufficient to damage Plaintiff's car to the degree shown in the photographs.[45] But there are more problems with Dr. Barnes's causation opinion.

In reaching his opinion, Dr. Barnes failed to learn key facts that could show the amount of force imparted to Plaintiff in either collision.  Specifically, Dr. Barnes admitted that he does not know the speed of either vehicle upon impact, the type and size of the vehicles involved, the amount of damage sustained by either vehicle, or the location and angle of impact of each collision.[46]  In addition, Dr. Barnes failed to review circumstantial evidence of the amount of force involved, despite the availability of such evidence.  For example, he did not review Plaintiff's deposition describing her perception of the events and the onset of her pain, or the FBI agent's deposition describing his perception of striking Plaintiff and the damage to his car, or, and most important, the photographs showing the damage to Plaintiff's vehicle after it crashed into the tree.

Instead of inquiring into these specific facts, Dr. Barnes states, "assuming all things being equal, if you were to give me an average motor vehicle accident versus an average [pedestrian] strike as a mechanism of injury for a cervical spine injury, I would

---

[45] *See* Monroe Dep. Exs. 12-15 [Doc. 17].
[46] Barnes Dep. 25, 27, 30-33 [Doc. 19].

choose the pedestrian who is hit by a motor vehicle."[47]   These general assumptions based on a hypothetical "average pedestrian strike" and "average motor vehicle accident" do not account for the specific facts surrounding either accident.   What the Court knows for certain is that all things are not equal in this case.   In fact, Dr. Barnes admits that he "discount[s] any of the specifics" and candidly remarks that his lack of knowledge of the specific facts in this case leads to his conclusion on causation.[48] Furthermore, he admitted in his deposition that "[i]t's hard to exactly tell where the injuries came from.   You know, the patient is amnestic at the time. In other words, she didn't remember a lot about whether she got injured or not[.]"[49]   But Dr. Barnes does not explain why the Court should accept his opinion based on a <u>lack</u> of knowledge about the two collisions. His mechanism of injury analysis lacks the substance to overcome the Plaintiff's amnesia.   Because Dr. Barnes lacks sufficient data to support his causation opinion, the Court finds his opinion fatally flawed.[50]

The Court recognizes that Dr. Barnes's opinion has some factual support.   He bases his opinion on a single notation in the medical records indicating that Plaintiff could walk after the first wreck.   Dr. Barnes explained that, in his experience as a practicing neurosurgeon, people suffering from Plaintiff's spinal injury experience pain

---

[47] *Id.* at 32.

[48] *Id.* at 33, 35.

[49] *Id.* at 10-11.

[50] *Cf. Myers v. Illinois Cent. R.R. Co.*, 629 F.3d 639, 645 (7th Cir. 2010) (excluding expert testimony of plaintiff's treating physicians that railroad work conditions caused numerous ailments because treating physicians lacked knowledge of both plaintiff's medical history and the nature of his work).

so severe that they cannot walk more than a few feet.[51]   Because Plaintiff walked following the first crash, Dr. Barnes concludes that the second accident caused her neck injury.[52]

The Court, however, finds that the simple fact that Plaintiff could walk after the first accident combined with Barnes's medical experience without more do not render his methodology reliable.  He does not explain why the nature and extent of Plaintiff's particular injury would render her unable to walk.  He fails to quantify or qualify his experience or to explain how that experience leads to his conclusion.  For instance, Dr. Barnes does not elaborate on how many patients he has treated with this type of injury or how many patients had this injury after crashing into a tree versus being struck by a car while walking on a roadway.  "[I]f the witness is relying solely or primarily on experience, then the witness must explain <u>how</u> that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."[53]   An appeal to extensive experience alone

---

[51] Barnes Dep. 36 [Doc. 19].

[52] *Id.* at 35.

[53] *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004) (quoting Fed. R. Evid. 702, advisory committee note (2000 amendments)) (emphasis in original); *see also United States v. Barnes*, 481 F. App'x 505, 513-14 (11th Cir. 2012) (citing *Frazier*, 387 F.3d at 1265) ("*Frazier* requires experts who provide probabilistic opinions to also provide quantitative bases for them, such as scientific studies or quantified personal experiences.").

cannot constitute a reliable methodology.[54]

Without a sufficient connection between his experience and the circumstances of these two collisions, Plaintiff is asking the Court to simply rely on the word—the *ipse dixit*—of her expert.  As the Supreme Court explained, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."[55]

Before leaving this part of the analysis, the Court will briefly address the three bases for Dr. Barnes's opinions outlined above.[56]   He first mentions his personal observation and treatment of plaintiff, and here the Court finds more problems.  He does not explain how knowing that she had a C7 facet fracture tells him which accident caused that fracture.  Moreover, he never said that if the C7 fracture was caused by Plaintiff's car crashing into a tree he would have treated it one way, and if she had been hit as a pedestrian, he would have treated it another way.  The Court strongly doubts that whether the first accident or the second accident caused the injury, it would have made any difference about how he treated her injury. Dr. Barnes recognized the importance of stabilizing a dangerous, unstable fracture in Plaintiff's neck no matter

---

[54] *See Cooper v. Marten Transport, Ltd.*, 539 F. App'x 963, 965 (11th Cir. 2013) (excluding testimony of biomechanical engineer that automobile collision caused damage to plaintiffs' spines and lumbar discs because, "[a]lthough [he] ha[d] extensive experience in his field, his opinion . . . was not the product of a scientifically reliable methodology."); *see also Wilson v. Taser Int'l, Inc.*, 303 F. App'x 708, 714 (11th Cir. 2008) ("A medical degree does not authorize [a treating physician] to testify when he does not base his methods on valid science.").

[55] *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

[56] *See supra* p. 10.

how that injury occurred.  So how do his observations and treatment matter here in determining causation?  He does not provide any convincing explanation for this.

Next, Dr. Barnes based his opinion on a review of her medical records including the diagnostic studies of her neck and the history she gave.  The problem with relying on the diagnostic studies of her neck is very similar to what the Court just said about relying on his treatment.  He does not tell us how the MRI scan of the cervical spine that showed a C7 fracture with neuroforaminal encroachment tells us which accident caused the fracture of Plaintiff's cervical vertebra.  The Court believes that he did not explain that because he cannot draw that conclusion by reviewing an MRI scan.  Furthermore, as far as the Plaintiff's history is concerned, Dr. Barnes described her as amnestic.  Thus he is relying on the medical history of a patient who he describes as having amnesia about most of what happened in the two accidents.  Finally, he did not even review all the medical records.  He did not know that Plaintiff had a broken pelvis or a broken foot.

The third basis for his causation opinion is his experience treating other patients suffering from the same type of injury.  The Court again finds a serious problem with this basis for his opinion.  No doubt Dr. Barnes has treated many patients with C7 facet fractures.  However, for reasons already explained, that is not decisive in this case.  This case does not involve questions about the diagnosis and treatment of a cervical fracture or about how to perform an open reduction with internal fixation of such a fracture.  To

the contrary, the Court wants to know how many patients he has treated for this type of fracture, who came to him with the unusual history of a cervical fracture that could have been caused by one of two accidents, both involving enough force to cause serious injury, and both occurring very close in time.  The Court has serious questions about whether he has ever found himself in such a situation.

As the Court has explained, serious problems exist with the bases for Dr. Barnes's opinions.  Although it is not necessary to proceed further with this analysis in light of all the problems described about the reliability of his methodology and his insufficient data, the Court will now scrutinize Dr. Barnes's causation opinion using the five advisory committee note factors mentioned above.

### Advisory Committee Notes Factors

With routine medical questions or cases involving medical opinions given by medical doctors, the Court usually finds the factors outlined in the advisory committee notes more helpful than the *Daubert* factors.  The Court will now test Dr. Barnes expert opinion using the advisory committee factors.

1) **Whether the expert is proposing to testify about matters growing naturally and directly out of research he has conducted independent of the litigation, or whether he has developed his opinion expressly for purposes of testifying.**

Dr. Barnes fails this test because he did not do the research necessary to offer a reliable causation opinion in this case.  Deciding which of two impacts, one from crashing into a tree with great force and the other from being hit by a car while walking

on the roadside, requires more research than just what a neurosurgeon does in treating a patient.  The Court finds it telling that his course of treatment did not depend on first ascertaining the cause of the C7 fracture.  Regardless of the cause, his primary objective was to stabilize the fracture.  Consequently, Dr. Barnes needed to do more research than just reviewing part of the medical records and knowing how he treated Plaintiff to offer a reliable opinion about what caused her injuries.  Thus, he fails this test.

2) **Whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion.**

In forming his opinion, Dr. Barnes improperly extrapolated the cause of the C7 facet fracture from the accepted premise that Plaintiff could walk after she hit the tree. Cervical spine injuries are very common in road wreck cases.  Most of those cases do not involve someone who was walking down a road when hit by a car.  Most of them involve injuries suffered while in a car or truck.

But more important, Dr. Barnes fails to explain how Plaintiff's fracture and the pain resulting therefrom would prevent a person from ambulating.[57]  This seems especially questionable when she could "move all her extremities without deficit" when she was examined in the emergency department on the day of the two accidents.  That means that she could move her legs without neurological deficits, so why could she not

---

[57] In his deposition, Dr. Barnes states that he "ha[s] never seen anyone with this kind of injury who has been able to ambulate more than a few feet[,]" but he refuses to place it outside the realm of possibility. *Id.* at 36.

walk?  According to her medical history given in the emergency room on the day of the injury, Plaintiff only complained of pain in her right arm, low back, and neck.  Dr. Barnes fails this test.

3) **Whether the expert has adequately accounted for obvious alternative explanations.**

For the reasons stated under factors (1) and (2) and the rest of this order,  Dr. Barnes did not adequately account for the obvious alternative that Plaintiff fractured her neck when she struck the tree, so he fails this test.

4) **Whether the expert is being as careful as he would be in his regular professional work outside his paid litigation consulting.**

Dr. Barnes was not as a careful in reaching his causation opinion as he would have been in his medical practice. Neurosurgeons routinely perform careful examinations of their patients and then do extensive diagnostic studies to diagnose and treat their patients.  From a review of the medical records, it is clear Dr. Barnes did that in treating Plaintiff.  However, he did almost no investigation of the circumstances of the two accidents.  He did not even look at all the medical records that described Plaintiff's pelvic fracture and foot fracture.  Furthermore, as outlined above, he did not look at the available data, despite the relevance of that data to his opinion.  Because of his failure to do so, his opinion fails this test.

5) **Whether the field of expertise claimed by the expert is known to reach reliable results from the type of opinion the expert would give.**

The Court has a serious question about whether neurosurgeons can reach reliable causation opinions that distinguished between two acute traumas that occur so close in time like we have in this case. This is especially true where the photographs depict such severe damage to Plaintiff's vehicle after crashing into the tree. But more important, the Court does not believe that a neurosurgeon can reach reliable results in a case like this when that neurosurgeon uses the limited data that Dr. Barnes used in this case. Hence Dr. Barnes fails this test also.

Having failed all five of the advisory committee factors, the Court finds that Dr. Barnes's causation opinion does not satisfy Rule 702. The Court will now move to the question of whether his causation opinion will assist the trier of fact.

### III.    Assist the Trier of Fact

In addition to finding his opinion unreliable, the Court finds Dr. Barnes's causation testimony will not help the trier of fact understand the evidence or determine a fact at issue for the following reasons.

First, Dr. Barnes's opinion is vague. As explained above, instead of inquiring into the specific facts surrounding the collisions at issue, Dr. Barnes rests his opinion on a comparison of the "average pedestrian strike" and the "average motor vehicle accident." However, he fails to define these terms and fails to point to anything in the

record suggesting the collisions at issue amounted to an "average pedestrian strike" and "average motor vehicle accident."  Such vague terms add nothing to a lay person understanding of the cause of Plaintiff's injuries in this case.  In fact, his opinion may confuse the trier of fact because it is couched in general hypothetical terms.

Second, Dr. Barnes's testimony offers nothing more than what Plaintiff's lawyers can argue in closing argument.  Plaintiff's lawyers can point to that same notation in the medical record showing Plaintiff could walk and argue that the neck fracture occurred after the second accident.  Dr. Barnes testimony adds nothing to that argument.

## CONCLUSION

Based on the foregoing, Defendant's Motion in Limine [Doc. 15] is **GRANTED**. Dr. Barnes failed to use proper data, he failed to employ a proper methodology, he failed all five of the advisory committee notes factors, and his opinion does not assist the trier of fact.  Accordingly, for all these reasons combined or taken separately, Dr. Barnes's medical causation testimony is excluded that the second accident with the FBI agent caused her injury.  Plaintiff, however, may still offer the testimony of Dr. Barnes as it relates to her diagnosis and treatment and related opinions.

**SO ORDERED,** this 31st day of March, 2014.

S/ C. Ashley Royal
C. ASHLEY ROYAL, CHIEF JUDGE
UNITED STATES DISTRICT COURT

ADP/ssh/bbp

22